UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

RONNIE TUCKER,                       18-CR-178
                                                   DECISION AND ORDER
        Defendant.

On September 6, 2018, this Court referred this case to United States Magistrate Judge H. Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 39. On October 26, 2018, the defendant, Ronnie Tucker, moved to suppress evidence seized after a search of his home on September 11, 2013, arguing that the warrant upon which the search was conducted was not supported by probable cause. Docket Item 42. In addition, Tucker moved to suppress statements he made to Drug Enforcement Administration ("DEA") agents, arguing that these statements were taken during a custodial interrogation without a waiver of his Miranda rights. *Id.*[1]

On December 21, 2018, Judge Schroeder held an evidentiary hearing on the motion to suppress statements. Docket Item 50 at 2. Two weeks later, Judge Schroeder issued a Report, Recommendation and Order ("RR&O") finding that Tucker knowingly and voluntarily waived his rights after having been given *Miranda* warnings and therefore recommending the denial of Tucker's motion to suppress his statements.

---

[1] The defendant also moved to compel the government to provide pretrial discovery and to particularize the charges under Fed. R. Crim. P. 7(f). Docket Item 42. Those motions were decided by Judge Schroeder and are not before this Court.

*Id.* at 4. On January 29, 2019, this Court granted Tucker leave to file late objections to the RR&O, Docket Item 52, and on February 11, 2019, Tucker filed objections, Docket Item 54.

In the meantime, Judge Schroeder issued a Report and Recommendation ("R&R") finding that Tucker's motion to suppress evidence seized pursuant to the search warrant should also be denied. Docket Item 53. On February 13, 2019, Tucker objected to the R&R. Docket Item 56.

After the government responded to both sets of objections, Docket Item 58, and oral argument was adjourned twice at Tucker's request, Docket Items 60 and 62, this Court heard oral argument on both motions on May 16, 2019. Docket Item 63.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully reviewed the thorough RR&O and R&R, the objections and responses, and the relevant portions of the record. Based on that de novo review, the Court accepts and adopts Judge Schroeder's recommendations to deny the defendant's motions in their entirety.

## BACKGROUND

### APPLICATION FOR WARRRANT AND SEARCH

Ronnie Tucker was arrested on September 11, 2013. Docket Item 42-1 at 29. On the same day, DEA Special Agent Shane A. Nastoff applied for a warrant to search

2

Tucker's residence on Niagara Falls Boulevard in Amherst, New York. *Id*. at 11-12. In support of his application, Nastoff submitted an affidavit attesting to the following facts. *Id*. at 14-25.

### May 2012 Controlled Purchase of Cocaine

In May 2012, a confidential source ("CS") met with DEA agents, and a telephone call between the CS and Tucker was recorded. *Id*. During the call, the CS and Tucker agreed to meet. *Id*. at 17. After meeting Tucker, the CS contacted Nastoff and told him that Tucker and his girlfriend had arrived at the meeting in a gray Toyota Highlander and that Tucker sold the CS an ounce of cocaine. *Id*. at 18. DEA agents then began surveilling the Highlander and followed it back to Tucker's residence where they saw Tucker exit the vehicle and enter the residence. *Id*.

### July 2013 Controlled Purchase of Cocaine

In July 2013, DEA agents began conducting surveillance on Tucker's residence, where they saw the Highlander parked in the driveway. *Id*. at 19. Around this time, the CS arranged another controlled buy with Tucker. *Id*. Tucker called the CS while the CS was meeting with DEA agents, and the call was recorded. *Id*. During the conversation, Tucker said that he was coming and the CS proceeded on foot to the meeting location. *Id*.

At about 1:19 p.m., a DEA agent watched Tucker leave his residence and enter the Highlander. *Id*. at 20. DEA agents then followed Tucker as he traveled directly to the meeting location. *Id.* After Tucker arrived at the meeting location, the CS entered Tucker's vehicle. *Id*. Less than a minute later, the agents saw the CS exit the vehicle and Tucker leave the meeting location. *Id*. DEA agents followed Tucker until he parked

3

his car near a restaurant located across the street from his residence. *Id.* After meeting with the CS, DEA agents determined that he had indeed purchased cocaine from Tucker. *Id.*

### September 11, 2013 Arrest and Seizure of Cocaine

On September 11, 2013, while under the direction and control of DEA agents, the CS placed another recorded telephone call to Tucker, and they again agreed to meet. *Id.* at 21. Agents surveilling Tucker's residence watched him leave the house and enter a gray Ford Fusion about twenty minutes after the CS's phone call. *Id.* After Tucker departed in the vehicle, DEA agents conducted a traffic stop. *Id.* They took Tucker into custody and found approximately an ounce of cocaine in Tucker's possession. *Id.* Later, Tucker "admitted that he was delivering the cocaine to a customer and selling it for $1,500.00." *Id.*

### The Search Warrant

Based on the information in Nastoff's affidavit described above, a state court issued a warrant authorizing Nastoff to search Tucker's residence on Niagara Falls Boulevard. *Id.* at 11-12. The warrant was based on "[p]roof, by affidavit" made by Nastoff. *Id.* at 11. The warrant authorized law enforcement to seize cocaine, drug paraphernalia, proceeds, firearms, and records related to drug trafficking. *Id.* at 12.

### WAIVER OF MIRANDA RIGHTS

On December 21, 2018, Judge Schroeder held an evidentiary hearing on the defendant's motion to suppress his statements. Docket Item 50 at 2. DEA Special Agent David Leary was the only witness. *Id.* at 3. Leary testified that after Tucker's

4

arrest on September 11, 2013, Tucker and his vehicle "were taken to a nearby church parking lot and the defendant was removed from his automobile." *Id.* at 2. Leary "approached the defendant and recited *Miranda* warnings and advice of rights to [Tucker] by reading them to [him] from a 'Miranda card.'" *Id.* After hearing Tucker "acknowledge that he understood his rights, [Special Agent] Leary asked [Tucker] if he was willing to answer some questions and cooperate with the agents." *Id.* Tucker "agreed to answer questions and cooperate." *Id.* Tucker then was taken to the "local DEA office for interrogation." *Id.*

Leary interviewed Tucker for about an hour at the DEA office. *Id.* at 2-3. During that time, Tucker did not ask for a lawyer, nor did he decline to speak to the DEA agents. *Id.* at 3. As a result of the interview, Tucker was "signed up as a confidential informant[,] given a DEA confidential informant number and released from custody" on the same day. *Id.*

## **DISCUSSION**

Tucker argues that the evidence obtained from the search of his residence should be suppressed because the warrant was not supported by probable cause and the "good faith exception" does not apply. Docket Item 54. Tucker also argues that his statements to DEA agents "at the point of arrest" should be suppressed because he never explicitly waived his *Miranda* rights. Docket Item 56. For the following reasons, this Court disagrees with both those contentions.

## I. MOTION TO SUPPRESS EVIDENCE OBTAINED FROM THE DEFENDANT'S RESIDENCE

"[A] court reviewing a challenged warrant—whether at the district or appellate level—'must accord considerable deference to the probable cause determination of the issuing magistrate.'" *United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)). "Thus, the task of a reviewing court is simply to ensure that the 'totality of the circumstances' afforded the magistrate 'a substantial basis' for making the requisite probable cause determination." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[I]t is generally understood that 'probable cause to search is demonstrated where the totality of the circumstances indicates a fair probability that contraband or evidence of a crime will be found at a particular place.'" *Id.* at 94 (quoting *Walczyk*, 496 F.3d at 156). "This required nexus between the items sought and the 'particular place' to be searched protects against the issuance of general warrants, instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Id.* (quoting *Stanford v. Texas*, 379 U.S. 476, 481 (1965)).

With those standards in mind, this Court agrees with Judge Schroeder that Nastoff's affidavit established a "fair probability that contraband or evidence of a crime [would] be found at [Tucker's residence]." *Id.* at 94 (quoting *Walczyk*, 496 F.3d at 156). For example, on the day of Tucker's arrest—the same day that the search warrant application was prepared and the warrant was issued—Tucker was seen exiting his home, surveilled entering his vehicle, and then stopped and found with an ounce of cocaine on his person. While in custody, Tucker "admitted that he was delivering the cocaine to a customer and selling it for $1,500.00." Docket Item 42-1 at 21. Likewise,

about two months earlier, in July 2013, DEA agents watched Tucker leave his house and go directly to a meeting where he sold the CS cocaine. Those facts—sworn to in the warrant application—were more than sufficient to establish the required nexus between Tucker's home and his sale of cocaine. So in contrast to a case where "the search warrant affidavit contained no evidence that [a defendant] distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there," *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016), there was a sufficient connection here.

The defendant argues that the facts are equally consistent with the possibility that the narcotics were stored not at Tucker's home but somewhere else and that Tucker had taken small amounts to his home—or kept them in his car—in each instance. But whether there might be an alternative explanation for the facts alleged is not the standard. *See United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985)) ("The fact that an innocent explanation may be consistent with the facts as alleged will not negate probable cause."). Instead, this Court must "accord considerable deference to the probable cause determination of the issuing magistrate," *Clark*, 638 F.3d at 93 (quoting *Walczyk*, 496 F.3d at 157), and then consider whether the facts established a "fair probability" that the government would find narcotics for distribution in Tucker's home. The warrant application more than met that standard here. [2]

---

[2] What is more, even if this Court is incorrect in finding that probable cause existed, "[u]nder [*United States v.] Leon*, evidence is admitted when the police act with objective good faith pursuant to a search warrant, even if the magistrate erred in issuing the warrant." *United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996) (citing 486 U.S. 897, 922 (1984)). In circumstances like those here, therefore, the evidence obtained as

## II.   THE MOTION TO SUPPRESS TUCKER'S STATEMENTS TO DEA AGENTS ON THE DATE OF HIS ARREST

*Miranda* imposes "on the police an obligation to follow certain procedures in their dealings with the accused." *Moran v. Burbine*, 475 U.S. 412, 420 (1986). "In particular, prior to the initiation of questioning, they must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to 'have counsel present if he so desires.'" *Id*. (quoting *Miranda v. Arizona*, 384 U.S. 436, 468-70 (1966)).

The Supreme Court and the Second Circuit have concluded that "a written waiver [of *Miranda* rights] is not required." *United States v. Boston*, 508 F.2d 1171, 1175 (2d Cir. 1974); *see North Carolina v. Butler*, 441 U.S. 369, 375 (1979). Indeed, "an explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the *Miranda* case." *Butler*, 441 U.S. at 375-76. Instead, an "implicit waiver can . . . suffice." *Id*. at 376.

In this case, Judge Schroder held an evidentiary hearing where Agent Leary "was the only witness who testified." Docket Item 50 at 3. "The defendant chose not to testify and did not present any other evidence on his behalf at the hearing in support of his motion to suppress statements given to him by DEA agents after his arrest." *Id*. As Judge Schroeder noted, Leary "testified that he read the 'warnings' [on a 'Miranda card'] . . . to the defendant while in [a] church parking lot right after the defendant had been

---

part of the search is admissible as long as the warrant application "draw[s] some plausible connection to the residence." *United States v. Brown*, 828 F.3d 375, 385-86 (6th Cir. 2016). For the same reasons discussed above, that even lower standard is met here.

arrested." *Id.* Judge Schroeder also noted that Leary "further testified that [Tucker] acknowledged that he understood his rights after they were read to him and stated that he was willing to answer questions and cooperate with the DEA agents." *Id.* And Judge Schroeder found Leary "to be a truthful witness and therefore accept[ed] his testimony in total." *Id.*

Tucker offered no evidence to the contrary. Indeed, other than arguing that he did not explicitly say that he waived his *Miranda* rights, Tucker offers no reason to doubt his knowing and voluntary waiver of those rights. What is more, in Tucker's own objections he acknowledges that he "listened to agents read him his *Miranda* rights, and told the agent[s] he understood those rights." Docket Item 56 at 4. On these facts, Tucker waived his *Miranda* rights.

## **CONCLUSION**

For the reasons stated above, in the RR&O, and in the R&R, the defendant's motion to suppress his statements to DEA agents, Docket Item 42, is DENIED, and his motion to suppress evidence obtained from the search of his residence, Docket Item 42, is DENIED as well.

SO ORDERED.

Dated:   May 29, 2019
         Buffalo, New York

                                         *s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE