UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cr-178 |
| | ) | |
| RONNIE TUCKER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**
**(Doc. 83)**

Defendant filed a motion to dismiss the indictment on speedy trial grounds.  (Doc. 83.)

The Government opposed the motion.  (Doc. 87.)  On January 6, 2020, the court held an

evidentiary hearing.  (Doc. 89.)  Following the hearing, the court set a briefing schedule for post-

hearing submissions.  (Doc 89.)  All briefs have now been filed.

**FACTS**

In May 2012, Defendant Ronnie Tucker came to the attention of the Buffalo, New York

office of the Drug Enforcement Administration ("DEA") after a confidential informant identified

him as a drug dealer.  With the assistance of the confidential informant, DEA agents conducted

two controlled buys of cocaine from Defendant in May and a third in July 2013.  (Gov't Ex. 2.)

Each transaction involved an ounce of powder cocaine.  (Gov't Ex. 2.)  On September 11, 2013,

DEA agents set up a fourth controlled buy.  Law enforcement stopped Defendant's car en route

to the intended location.  Defendant was arrested and taken to the principal DEA office in

Buffalo for questioning.

After receiving a Miranda warning, Defendant agreed to speak with DEA agents.  Before

his interview, he signed a "Waiver of Speedy Arraignment" form which stated that he had been

advised of his right to appear before a judicial officer and chose to waive that right with the knowledge that he could be charged and arraigned in the future. (Doc. 83-1 at 1–2.)

Defendant remained at the DEA office for several hours while agents obtained a search warrant from state court. A search of his home revealed over 500 grams of cocaine in addition to a quantity of cocaine base found on his person. In searching the home, the agents found two handguns and ammunition. (Gov't Ex. 4, 5.) Following the search, Defendant identified his sources of supply and agreed to cooperate with law enforcement. He was released several hours after his arrest without being charged.

For the next three years, Defendant remained free and uncharged. He cooperated with law enforcement in the investigation of drug trafficking in the Buffalo area. He wore a wire and permitted recordings to be made in his home. Over time the individuals who were his sources of supply grew to suspect him. Throughout his period of cooperation, Defendant remained concerned about the dire consequences of being exposed as a cooperator.

In the spring of 2015, the U.S. Attorney's Office in Buffalo sent Defendant a target letter identifying him as the subject of a criminal investigation. Receipt of the letter qualified Defendant for the appointment of counsel. As a result of the target letter, Defendant appeared before U.S. Magistrate Judge Hugh Scott who assigned attorney Robert Liebers to represent him.[1]

---

[1] Information about this brief appearance is scarce. The appearance in court was not necessary as a matter of law. The clerk's office could have assigned attorney Leibers to represent Defendant upon notification by the U.S. Attorney's Office of the issuance of a target letter. Criminal Justice Act Plan, Western District of New York, (2019), ¶¶ IV(A)(1)((l), (B)(1)(a)(ii). The court appearance is described in a later docket entry by Magistrate Judge Schroeder after Defendant raised it himself in open court as the basis for his speedy trial claim. Docket No 49. The appearance in 2015 was the first time Defendant appeared in federal court following his arrest in 2013.

On October 31, 2016, the Government filed a criminal complaint against Defendant. He was charged with possession of cocaine with intent to distribute. The charge related to the three controlled buys in 2012 and 2013. It did not address the cocaine or firearms discovered in the search in September 2013. At the January 6, 2020, motion hearing before this court, Assistant United States Attorney Violanti testified credibly that the criminal complaint was drafted to encompass the less serious potential charges in order to reach a plea agreement favorable to Defendant. A conviction on charges related to the half-kilo of cocaine and the firearms would likely lead to higher guidelines calculations, mandatory minimum provisions, and a consecutive sentence for the use of a firearm in furtherance of a drug offense.

Defendant had an initial appearance on the complaint on November 8, 2016. Attorney Leslie Scott from the Federal Public Defender's office was assigned to represent him. Shortly after his arraignment, Defendant appeared for a proffer session with investigators and prosecutors.

At the time of initial appearance, the magistrate judge entered a "conditional order of dismissal without prejudice pursuant to Rule 48(b)." (Doc. 1.) The Rule 48 order appears in a text only minute entry in the electronic docket. (*See* Minute Entry dated November 8, 2016.) It provides for dismissal on December 31, 2013 if trial had not commenced by that date. It excludes time up to December 31, 2013 for purposes of the Speedy Trial Act and Fed. R. Crim. P. 5.1.

On December 28, 2016, the Government moved for an extension of the Rule 48(b) period until March 31, 2017. (Doc. 4.) The motion and accompanying affidavit from AUSA Violanti describe Defendant's agreement to cooperate and provides information about the principal case (*United States v. Washington*, 14-cr-215) in which he has provided information. The affidavit

states that the parties are negotiating a pre-indictment plea with a reduced sentence to reflect Defendant's cooperation. The adjournment was sought "in an effort to protect the defendant's identity as a cooperator." Defense counsel agreed to the request for the 90-day adjournment and to the exclusion of the additional time from speedy trial calculations.

The court issued a text only order similar to the initial Rule 48 order. The order extended the dismissal date by 90 days and excluded the intervening time from speedy trial calculations. (Doc. 5.)

The Government filed similar motions for 90-day adjournments on March 31, 2017; July 13, 2017; September 22, 2017; November 27, 2017; January 26, 2018; April 5, 2018; June 5, 2018; July 23, 2018; and August 30, 2018. Each motion resulted in a further extension of the dismissal date. Each motion is supported by an affidavit that describes the agreement of the prosecution and the defense that additional time is required to develop a plea agreement. Each motion resulted in a text only order extending the conditional dismissal date by two or three months. (Docs. 8, 12, 15, 18, 21, 24, 26, 33, 37.) In addition, the court extended the adjournment date on May 9, 2017 to July 21, 2017. (Minute Entry, May 9, 2017.)

On January 17, 2017, the magistrate judge ordered Defendant detained because he had violated his conditions of pre-trial release. He has remained detained since that date.

On May 9, 2017, federal public defender Scott was replaced by CJA panel attorney Robert Liebers as a result of a conflict within the federal public defender's office. (Minute Entry dated May 9, 2017.) Mr. Liebers had represented Defendant before he was charged.

On July 26, 2018, the court replaced Mr. Leibers with attorney John Ange. Mr. Leibers had fallen ill and was unable to complete the representation. Very unfortunately, he later died from his illness. (*See* Docs. 32, 35.)

On September 6, 2018, the grand jury returned an indictment. The new charges concerned the cocaine and firearms found in the course of the search on September 11, 2013. The charges in the complaint related to the controlled buys in 2012 and 2013 now fell outside the five-year statute of limitations. Defendant rejected efforts to persuade him to waive the statute of limitations. As a consequence, the Government filed the more serious charges of possession with intent to distribute 500 grams of cocaine (Count One), possession with intent to distribute cocaine base (Count Two), maintaining a drug-involved premises (Count Three), possession of firearms in furtherance of drug trafficking (Count 4) and felon in possession (Count 5).

Defendant appeared for arraignment on September 11, 2018. On September 12, 2018, the magistrate judge entered a scheduling order establishing a motion deadline (October 26, 2018) and an oral argument date (November 14, 2018). Defendant filed motions to suppress, for discovery, and for a bill of particulars on October 26, 2018. The motions to suppress remained pending until May 29, 2019 when District Judge Lawrence Vilardo issued a ruling adopting the Report and Recommendations previously issued by the magistrate judge. (Docs. 39, 40, 42, 50, 64.)

In November 2018, defense attorney Ange filed a motion indicating a difference of opinion with his client about the direction of the representation. At a hearing on November 14, 2018, the magistrate judge found defendant's concerns to be unfounded and continued the representation.

On December 21, 2018, before the start of a hearing on defendant's motion to suppress statements, the defendant addressed the court about his belief that his case was proceeding in violation of his right to a speedy trial. He identified his appearance in 2015 when he was first

assigned counsel due to the receipt of grand jury target letter as the basis for his concern. The magistrate judge advised him that "his concerns would be noted for the record."

On July 10, 2019, Judge Vilardo issued a pre-trial order scheduling jury trial for September 10, 2019. The accompanying pre-trial order sets a series of trial preparation deadlines falling between August 6, 2019 and jury selection on September 10, 2019. (Doc. 65.)

Relations between Defendant and Mr. Ange did not go well. The court excused Mr. Ange from further representation on July 22, 2019. (Doc. 67.) Attorney Mark Foti accepted the assignment in his place at a hearing on July 24, 2019. The court entered an order excluding time under the Speedy Trial Act from July 24, 2019–August 12, 2019. The trial date remained unchanged. (Doc. 68.)

On August 12, 2019, the parties appeared before Judge Vilardo. Attorney Foti requested additional time to meet with his client to discuss additional motions and a plea offer. The trial date was reset to January 6, 2020, with earlier dates for motion practice deadlines. The court excluded time under the Speedy Trial Act through January 6, 2020. (Doc. 70.)

The parties appeared again before Judge Vilardo for status conferences on November 6 and November 20, 2020. Counsel advised that they were discussing a plea. The court continued to exclude time until the trial date on January 6, 2020. (Docs. 72–74.)

By order dated November 27, 2019, Judge Vilardo transferred the case to the undersigned judge for trial. (Doc. 76.)

On December 10, 2019, Defendant filed a motion to dismiss on Speedy Trial and Sixth Amendment grounds. The court postponed the trial date and held an evidentiary hearing on the motion on January 6, 2020. (Doc. 89.)

Following the January 6th hearing, the court set deadlines for post-hearing submissions. (*Id.*) Plaintiff filed his memorandum in support on January 31, 2020. (Doc. 92.) The Government responded in opposition on February 24, 2020. (Doc. 97.) On March 5, 2020, Defendant filed his reply brief. (Doc. 99.)

## ANALYSIS

Defendant's motion alleges three different periods of delay:

- The time between his initial arrest on September 11, 2013 and his initial appearance on the criminal complaint on November 8, 2016;
- The time covered by the pending complaint from October 31, 2016 until his arraignment on the indictment on September 11, 2018;
- The time between his arraignment on the indictment and the filing of the Speedy Trial motion on December 10, 2019.

## I.    Pre-Charge Delay

Defendant objects to the period of more than three years between his initial arrest in 2013 and the filing of a criminal complaint and his initial appearance in 2016. During this time, defendant served as a confidential informant.

The Due Process Clause governs the length of time within which the Government must file a charge following an arrest. Supreme Court case law conditions dismissal on a showing of substantial prejudice to the defendant and prosecutorial misconduct. *See United States v. Marion*, 404 U.S. 307, 324 (1971) ("Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused."). Time spent in pre-charge investigation does not give rise to a violation in the absence of an intentional effort to obtain an unfair advantage over the defendant. *United States*

*v. Lovasco*, 431 U.S. 783 (1977) (good faith investigative delay, even if it causes some prejudice, does not violate Due Process Clause).

### A. Substantial Prejudice to Defendant's Rights to a Fair Trial

Defendant was arrested on September 11, 2013 and was questioned by the DEA. Following his arrest defendant signed a waiver of arraignment form (Gov't Ex. 1) and was released without a charge. The Government did not file criminal charges against Defendant at that time because he agreed to become a cooperator on other pending investigations. In May 2015, defendant received a letter from the Government identifying him as a target of a grand jury investigation. He appeared before U.S. Magistrate Judge Scott who assigned attorney Liebers to represent him. He was charged at the end of October 2016.

Defendant alleges that this period of pre-charge delay prejudiced him because he provided incriminating statements and entered into a cooperation agreement without fully understanding its consequences. (Doc. 83 at 8.) The Government responds that Defendant signed a waiver of speedy trial rights pursuant to Rule 5 and that he agreed to cooperate in exchange for lesser charges against him. (Doc. 87 at 2–3.)

In evaluating the claim of prejudice, the court applies a standard of actual prejudice. *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979) ("pre-indictment delay transgresses due process limits only where there is a showing of actual prejudice to the defendant's right to a fair trial").

There is scant evidence to support defendant's claim that his right to a fair trial was prejudiced by the pre-charge delay. He is now charged with possession of cocaine and firearms discovered in the search of his residence following his arrest in September 2013. He offers no evidence that any defense he may possess against these charges was compromised by the passage

of time.  He makes no showing that the statements he made during his subsequent years as an informant are in any way relevant to the possession and firearms charges.  He remained free from detention or supervision until after his arrest and charge in 2016.  The court concludes that defendant has failed to show substantial prejudice.

### B.  Intentional Device Used by Prosecution to Gain Tactful Advantage

Next the court considers whether the delay was used by the Government as an intentional device to gain tactical advantage over Defendant.  At the hearing on this motion, the Government provided credible testimony that the pre-charge delay was due to a desire to keep Defendant's role as a cooperator hidden while law enforcement investigated and prosecuted defendant's sources of supply.  The delay allowed Defendant to continue to earn credit with the Government through his assistance.

The defendant has failed to demonstrate that misconduct by the Government caused the three-year delay between his arrest and the filing of the criminal complaint.  "To show unjustifiable conduct, a defendant must demonstrate that the government has intentionally used delay to gain unfair tactical advantage."  *United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003).  The prosecution gained no unfair advantage in seeking to prove either the original charges against defendant which concerned street-level controlled buys or the more serious charge in the indictment of possession of cocaine and firearms resulting from the search of the residence.  The Defendant identifies no unfair advantage with specificity.  Instead, the record is clear that both the Defendant and the Government hoped to benefit from the delay – the Government through obtaining evidence against other suppliers and the defendant through the lesser charges or reduced sentence commonly afforded to defendants who cooperate with Government investigations.

The court denies the motion to dismiss to the extent that it is based on pre-charge delay because the defendant has not made the showing of actual prejudice and unfair advantage required to support a due process claim.

## II.     Speedy Trial Act and Sixth Amendment

The Sixth Amendment and the Speedy Trial Act, 18 U.S.C. §§ 3161 et seq., both apply to the delay occurring after the criminal complaint was filed.  The effect of delay for purposes of the Sixth Amendment is governed by the four factors identified by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972).  The Speedy Trial Act, enacted two years after the *Barker* ruling, contains more detailed direction.  18 U.S.C. §§ 3161 et seq.  "It gives effect to, but does not entirely displace, the Sixth Amendment right to a speedy trial."  *United States v. Fox*, 788 F.2d 905 (2d Cir. 1986).  In this case, Defendant seeks relief under the Sixth Amendment only.  The court's ruling concerns compliance with the speedy trial standards established by *Barker*.  Compliance with the Speedy Trial Act is not before the court.

## III.     Which Arrest Triggers Speedy Trial Concerns Under the Sixth Amendment?

Defendant argues that the period of pre-trial delay subject to Sixth Amendment protection began with his arrest in 2013.  The Government responds that the time subject to the court's consideration began to run when Defendant was charged and arrested for a second time in 2016.

The court agrees with the Government that the arrest which triggers speedy trial concerns is the arrest in October 2016 which followed the issuance of the criminal complaint and resulted in his initial appearance.  It is not the arrest in 2013.  That arrest did not result in the filing of a charge against the defendant.  It is true that defendant's arrest in 2013 marked the beginning of more than six years of involvement with federal law enforcement which is not over yet.  But the

case law is clear that the Sixth Amendment does not guarantee a "speedy investigation" or a

rapid charging decision. *United States v. MacDonald*, 456 U.S. 1, 8 (1982):

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by the passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitation. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

While an arrest leading to a criminal charge may be the initial triggering event for speedy

trial purposes, an arrest without a charge is not. In this case, defendant was arrested twice. He

was released without being charged on the first occasion. The second arrest occurred as a result

of the criminal complaint. It is that second arrest and his initial appearance a few days later

which mark the beginning of the period subject to Defendant's right to a speedy trial.

## IV. Defendant May Raise a Speedy Trial Violation Despite Consenting to Motions to Extend

The Government argues that defendant waived any speedy trial claims by agreeing to the

repeated motions to extend the trial date. *See* Gov't Opposition, p. 17 ("All adjournments during

the Criminal Complaint stage were either by consent or operation of law (motions or new

counsel.)")(Doc. 97). It is true, of course, that the Government's motions were unopposed. But

speedy trial rights under the Sixth Amendment are different from other individual constitutional

rights which can always be waived. The *Barker* opinion recognizes the strong public interest in

a speedy trial. "…[S]ociety has a particular interest in bringing swift prosecutions, and society's

representatives are the ones that should protect that interest." 407 U.S. at 527. The Supreme

Court renewed its commitment to this principle in the context of the Speedy Trial Act in *Zedner*

*v. United States*, 547 U.S. 489 (2006) (neither prospective waiver nor judicial estoppel arising from defendant's filings preclude him from asserting a speedy trial defense at a later time).

The court understands that the defense did not always speak with consistency on this issue. On the one hand, defendant's attorneys consented to the Government's multiple motions to extend the trial date. On the other, the defendant addressed the judge and attempted to raise the speedy trial himself. The Second Circuit addressed a similar problem in *United States v. Tigano*, 880 F.3d 602,618 (2d Cir. 2018). "…[W]e conclude that in the context of a speedy trial action such as this one, a defendant's assertion of his own right to a speedy trial – even though ignored or contravened by his counsel — is the relevant fact for purposes of Sixth Amendment analysis." The divide between attorney and client was sharply delineated in *Tigano*. Here the defendant spoke up once on the record. In both cases, however, the defendant stated aloud his concern that his trial was unfairly delayed.

The *Barker* decision recognizes the responsibility of a defendant to raise a speedy trial defense by including it among the factors to be weighed by the court. A defendant who fails to assert his Sixth Amendment right prior to trial may lose the opportunity to raise it later. The court will follow *Barker* in considering this factor among several others governing the speedy trial analysis.

## V.   Sixth Amendment – *Barker v. Wingo*

"…[T]he right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer v. State of North Carolina*., 386 U.S. 213, 223 (1967). In *Barker*, the Supreme Court established the balancing test which remains the standard for measuring compliance with the speedy trial guarantee. The *Barker* decision requires the court to consider

four factors. These are: length of delay; reason for the delay; defendant's assertion of his right; and prejudice to the defendant. *Id*. at 530.

### A. Length of Delay

The pre-trial delay in this case now exceeds three years. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (internal citation omitted). The *Doggett* opinion identified one year as a rough measure of excessive delay. "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id*. at 652, n. 1. The Second Circuit has described a delay of four and one-half years as "unquestionably substantial," *United States v. New Buffalo Amusement Corp*., 600 F.2d 368, 377 (2d Cir. 1979), a delay of almost seven years as "extreme," *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018), and five years and eight months as "easily…substantial and presumptively prejudicial." *United States v. Black*, 918 F.3d 243 (2d Cir. 2019). Measured against these precedents – and having in mind that the pre-trial delay period in this case is not over yet – the court has no difficulty in concluding that the period of approximately three years since Defendant's initial appearance represents a presumptively prejudicial delay which triggers examination under *Barker*.[2]

---

[2] The court calculates the period of delay with greater specificity below and attributes some time to the Defendant and the bulk of time to the Government. The final count is 33 months of delay. For purposes of deciding that the delay is long enough to trigger consideration under *Barker*, the period of approximately three years is clearly sufficient.

**B. Reason for delay:  Complaint to Indictment**

The delay in this case occurred in two stages:  the period between arrest and the filing of the complaint and the subsequent period between indictment and the present date.

Close examination of the record reveals very little justification for the first period of delay.  There is no evidence of trial preparation or motion practice.  Over the course of 22 months, the prosecution filed 10 motions for a continuance of the trial date.  Each expressed the conviction that a plea was imminent.  The defense joined in each request for more time.  The docket entries reveal the following events during the initial 22 month period of pre-trial delay:

On January 17, 2017 – two months after initial appearance – defendant was arrested and detained for violating his conditions of pre-trial supervision.

On May 9, 2017 – six months after initial appearance – the court reassigned attorney Liebers to the case because of a conflict of interest within the Federal Public Defenders office.

On June 26, 2018 – 18 months after initial appearance – the parties appeared before the district judge for a status conference concerning a potential plea.  The record reflects a dispute about defendant's criminal history for purposes of the pre-sentence report.

On July 26, 2018 – 19 months after initial appearance – attorney Liebers was excused from further representation due to his illness and attorney Ange was appointed.

These were the only events described in the court's record over the course of almost two years, except for ten orders extending the trial date.  None of these events justifies such a lengthy delay.  The case was very simple: the possession charge in the complaint might have required testimony from the confidential informant, a law enforcement agent, and, potentially, a chemist.  No trial is without issues, and the court does not minimize the need for preparation by both sides.

The substitution of counsel is certainly a reason for some delay, but this is a simple case. 60 days would surely be sufficient for each newly appointed attorney to meet with the client and review the case file. Attorney Leibers, moreover, had the advantage of his previous representation of the Defendant in 2015.

The Government directs the court's attention to the sealed affidavits describing the defendant's cooperation and plea agreement. The first sealed affidavit describes defendant's proffer session on November 15, 2016 and his proposed testimony in *United States v. Washington and McDuffie*, Docket No. 14-cr-215-LJV. (Doc. 4.) The affidavit describes the parties' expectation that a plea agreement would be reached within the 90-day adjournment and states that defense counsel did not object. Subsequent affidavits filed in support of nine subsequent motions for continuance were similar. They discussed the possibility of a plea agreement with an open-ended cooperation provision in light of the time required for Washington and McDuffie's case (Doc. 9), the replacement of attorney Scott by attorney Leibers and a potential career offender issue (Doc. 13), the finalization of a plea agreement (Doc. 16), the prosecutor's commitment in a complex trial and ongoing plea negotiations (Docs. 19, 22), the agreement of the parties on the terms of a plea (Doc. 24), a change of plea date (Doc. 26), an unforeseen issue with the plea agreement (Doc. 29), the illness of attorney Leibers (Doc. 33), and a new change of plea date (Doc. 37).

Any one of these affidavits would provide a reasonable basis for the presiding judge to postpone the trial. Considered as a whole, however, they support an inference that very little was happening to move the case forward. Pre-trial delay is like weight gain. It is a process of accumulation. Had the attorneys appeared before the magistrate judge at the initial appearance and explained that the Government would need two years to obtain an indictment in a simple

drug case, the request would have been denied.  In hindsight (which is the only lens through which we can examine delay), the court should have done more to bring the case to a conclusion. A pre-trial scheduling order is helpful in setting deadlines and expectations.  A firm trial date always has a beneficial effect.  All the case needed was a judicial statement that one of the continuance orders would be the last and that a trial would follow.

Within the Western District of New York, pre-trial supervision of criminal cases is heavily delegated to magistrate judges.  This practice has its origins in the district's heavy caseload and is an entirely understandable solution.  But it invites delay.  In this case, the magistrate judge was in a weak position to announce a trial date since an indictment and a return of the case to the district judge would both be required.  His only tool was a potential dismissal under Fed. R. Crim. P. 48, and that was at once too little and too much.  It was too much because dismissal is a severe remedy.  It was too little because it was unlikely to be applied.  Instead, the case drifted from continuance to continuance – each continuance order reasonable in itself but contributing to excessive delay.

*Barker* instructs the lower courts to weigh the reasons for delay depending on whether they are deliberate, valid or the result of negligence or overcrowded dockets.  The court finds no evidence of bad faith or improper reasons for delay attributable to the Government during the period between initial appearance and indictment.  There was no effort to obtain unfair advantage through postponements.  The court also finds limited evidence of "valid" reasons. The two replacements of counsel – first due to a conflict and later due to an attorney's illness – are institutional reasons for delay which count against the Government.  Neither lay within Defendant's control.  It is the responsibility of the court to provide him with counsel, and if an unexpected conflict or a tragic illness arises, the Defendant cannot fairly be charged with the

resulting delay. The remainder of the delay was primarily due to inactivity by all participants while they waited for the completion of a plea agreement. The perennially crowded docket in the Western District of New York surely played a role in the court's willingness to grant ten successive motions for continuance. These are at best "neutral" delays which count against the Government. *See United States v. Tigano*, 880 F.3d 602, 615 (2d Cir. 2018) ("…time spent in plea bargaining is a gamble taken by the government regarding the defendant's speedy trial rights and is properly counted against the government…Delays due to 'overcrowded courts' are counted against the government.") Another reason for delay which appears in the continuance motions is the Government's desire to postpone the resolution of Defendant's case until after he testified in the trial of Washington and McDuffie. This is a common and appropriate reason to postpone a case. It also counts as a neutral delay which – like the wait for a plea agreement – counts against the Government.

In short, the 22 months at issue are months attributable to the Government for reasons of neutral or institutional delay. None count "heavily" under the *Barker* analysis because none reflect intentional efforts by the prosecution to obtain an unfair advantage. But none count against the defendant. These months reflect a pattern of inactivity on the docket which allowed the case to slip from one year into the next without resolution.

### C. Indictment to Present

The Government obtained an indictment on September 6, 2018. So much time had passed since the investigation commenced that the original charge of possession with intent to distribute cocaine was barred by the five-year statute of limitations. Defendant was charged instead with five counts arising out of his arrest and the search of his residence on September 11, 2013. Defendant appeared for arraignment on September 11, 2018, and the court entered the

first scheduling order in the case on September 12, 2018. The defense filed two motions to suppress which were referred to the magistrate judge and heard on November 27 and December 21, 2018. The magistrate judge issued timely Reports and Recommendations, both of which were the subject of objections. Following a second round of briefing and argument, the suppression motions were resolved by the district judge on May 29, 2019.

On May 16, 2019, the court set a trial date of September 10, 2019, and excluded the intervening time. Difficulties between defendant and attorney Ange (who had succeeded attorney Liebers) resulted in the appointment of attorney Foti on July 24, 2019. On August 12, 2019, the trial was reset to January 6, 2020 due to the need of new counsel for more time. The intervening time was excluded and a schedule was set for additional motion practice. That trial date was postponed by the filing of the speedy trial motion on December 10, 2019, the hearing on the motion on January 6, 2020, and the post-hearing briefing schedule.

The post-indictment course of the case is what should have happened in the first instance. The case was subject to a series of scheduling orders. Motions were filed and resolved by the court. Unexpected developments like the need to substitute counsel resulted in extension of the trial date. The trial was set for early January 2020 – 16 months after indictment – which would have been a reasonable period of pre-trial preparation, especially with the change of attorneys during the summer of 2019.

In attributing the post-indictment delay to valid or neutral categories, the court counts the ten months from arraignment to the substitution of attorney Foti as neutral time which counts against the Government. This period of time is best described as neutral resulting from the time taken to schedule, hear and rule on the suppression motion. Such periods count against the Government. They are not counted against the defendant. *See United States v. Vispi*, 545 F.2d

18

328, 334 (2d Cir. 1976). Six months were taken up by the suppression motions. Time spent in motion practice is neutral time which counts against the Government. Other periods from arraignment to the first suppression hearing (three months) and from the resolution of the suppression motion to the continuance necessitated by the appointment of new counsel (three months) were delays attributable to the need to schedule court events with notice to counsel and consistent with the court's own availability. These periods count as neutral time attributable to the Government. *Barker*, *Id*. at 531 ("A more neutral reason such as … overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Standing by itself, the post-indictment delay was not excessive. It contributes significantly, however, to the total period of delay.

The replacement of attorney Ange by attorney Foti after a dispute developed between attorney Ange and Defendant resulted in an adjournment of the trial date from September 10, 2019 to January 6, 2020 and the exclusion of this time from the Speedy Trial Act clock. (Doc. 70.) This period runs from the date the court granted the motion to extend (August 12, 2019) and covers five months. It is fairly attributable to the defendant.

The entire period of delay from complaint to the January 6, 2020 trial date was 38 months (October 31, 2016–January 6, 2020). The court attributes five months to the defendant representing the continuance sought by attorney Foti. The remaining 33 months is neutral time attributed to the Government. Obviously, the delay continues to accumulate since the filing of the defendant's speedy trial motion. The court will not count this time against the Government. The Defendant could have filed the motion earlier, and there is an inequity in charging the

Government with the delay required to resolve the defendant's own motion.  In balancing the *Barker* factors, the court will use the 33-month figure.

### D.  Defendant's Assertion of His Speedy Trial Rights

Defendant asserted his right to a speedy trial when he appeared before the magistrate judge on December 21, 2018.  The docket entry states, "Before Suppression Hearing began, defendant addressed the Court about a speedy trial issue he feels exists with a case before a different magistrate judge in 2015.  Court advised defendant his concerns would be "noted for the record."

When he addressed the judge, defendant was seeking to draw the court's attention to his appearance before a different magistrate judge in 2015 for appointment of counsel.  He mistakenly believed his speedy trial rights ran from that date.  Mistaken or not, his statement put the court on notice of the speedy trial issue.  In December 2018, the case had been pending for 13 months.  As required by *Barke*r, the Defendant himself identified the issue for the court on the one occasion when he had an opportunity to speak directly with the judge about pre-trial delay.

In weighing this factor, the court places little weight on the defendant's consent to the Government's repeated motions for continuance.   Each motion was prospective.  It extended the trial date forward by several months.   In *Zedner*, the Supreme Court criticized such a waiver in the context of the Speedy Trial Act because it "would seriously undermine the Act because there are many cases –like the case at hand – in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest."  547 U.S. at 502.  Similar logic applies to a prospective waiver of Sixth Amendment rights.  These too encompass both the defendant's and the public's interest in reaching trial expeditiously.  "…[T]here is a societal interest in providing a speedy trial which exists separate from, and at times in opposition

to, the interests of the accused." *Barker*, Id. at 519. Weighing the defendant's consent to these extensions heavily—or rejecting the speedy trial challenge altogether on this basis – would fail to recognize sufficiently the strong public interest in a speedy trial.

### E. Prejudice to the Defendant

Defendant has been detained for over three years awaiting trial. That fact alone demonstrates prejudice. *Barker*, *Id*. at 532. At the hearing on the speedy trial motion, the Defendant testified credibly concerning the particular stress and risk of his incarceration in a local jail as a known cooperator. The court has no way to measure before trial whether the Defendant has lost access to witnesses or evidence. Certainly, there has been no showing that the delay has influenced the likely outcome of what the court has already identified as a relatively simple case.

### F. Balancing of the Four Factors

The court begins by comparing the delay in this case of just over three years with other speedy trial decisions within the Second Circuit. The leading circuit decisions identifying pre-trial delay as excessive for purposes of the Speedy Trial clause include:

- *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368 (2d Cir. 1979) – 4 ½ years described as "unquestionably substantial." *Id.* at 377.

- *United States v. Tigano*, 880 F.3d 602, 619 (2d Cir. 2018) – nearly seven years described as "extreme."

- *United States v. Pennick*, 2017 WL 4994465, at *1-*2 (2d Cir. Nov. 2, 2017) – 54 months in pretrial detention and 25 months on electronically-monitored home incarceration described as "extraordinary."

- *United States v. Black*, 918 F.3d 243 – 5 years, 8 months described as "substantial and presumptively prejudicial."

- *United States v. Vispi*, 545 F.2d 328 (2d Cir. 1976) – 20-month delay described as "inexcusable" in "this simple little [misdemeanor] case."

- *United States v. Carini,* 562 F.2d 144 (2d Cir. 1977) – 34-month delay described as "disturbing" and held to violate constitutional standard.

Cases denying relief include:

- *Flowers v. Warden, Connecticut Correctional Institution, Somers*, 853 F.2d 131, 132 (2d Cir. 1988 –17-month delay described as "considerably shorter than those in other cases where we have found no speedy trial violation." The decision identifies ten prior appellate rulings in which delays between 21 months and six years (!) were insufficient to support a speedy trial violation. The *Flowers* decision concludes with a comment which tempers the court's denial of relief under the Speedy Trial clause. "Despite this, we express our deep concern with any lock-step system which forces an incarcerated defendant to wait 17 months for trial….we nevertheless point out that a case with a delay similar to the one here, but with a showing of greater prejudice to the defendant or some bad faith by the prosecution, might well merit dismissal on speed-trial grounds. *Id*. at 134.

- *United States v. Sterling*, 763 Fed. App'x 63 (2d Cir. 2019) – (8 ½ month delay insufficient for Speedy Trial violation.

- *United States v. Swinton*, 2019 WL 7050127 (2d Cir. Dec. 23, 2019) – 57 month delay from time of arrest insufficient when 51 months of delay is attributed to defendant's motions and changes of counsel.

- *United States v. Howard,* 443 Fed. App'x 596 (2d Cir. 2011) – 43 months insufficient in light of defendant's failure to satisfy three of four *Barker* factors.

- *United States v. McGrath,* 622 F.2d 36 (2d Cir. 1980) – 24 months insufficient.

- *United States v. DiFrancesco,* 604 F.2d 769 (2d Cir. 1979) – 30 months insufficient in part because defendant was responsible for substantial part of delay.

Trial court decisions within the Second Circuit include:

- *United States v. Green*, 2018 WL 786185 *7 (W.D.N.Y. Feb. 8, 2018) – 68 months described as "considerable," "presumptively prejudicial, and "extraordinary."

- *United States v. Abrahams,* 493 F. Supp. 296 (S.D.N.Y. 1980) – 18-month delay insufficient for Speedy Trial violation.

- *United States v. Pettway*, 2017 WL 3475434, *3 (W.D.N.Y. Aug. 11, 2017) – 67-month delay insufficient when "majority of delay is attributable to the defendants' motion practice and the delay attendant to multi-defendant criminal trials."

- *United States v. Hoskins*, 2019 WL 3890831 (D. Conn. Aug. 19, 2019) – six year delay insufficient in light of defendant's failure to demonstrate prejudice or to raise issue during period of delay.

- *McCarthy v. Manson*, 554 F. Supp. 1275 (D. Conn. 1982) – 19 month delay sufficient in light of defendant's frequent invocation of the speedy trial guarantee and other *Barker* factors.  In *McCarthy* the state conceded that 19 months was excessive.

This survey of decisions, necessarily incomplete and greatly abbreviating the individualized discussion of the *Barker* factors in each case, reveals that Defendant's period of three years of pre-trial delay falls below the 5 – 8 year range where dismissal is virtually assured and above the range of two years or less where many courts have denied relief.  This is not a case

of extraordinary delay nor is it one in which misconduct or unfair advantage by the Government plays any role. Rather, this is a case in the middle in which a court with a crowded docket and busy attorneys on both sides, including a sequence of four defense attorneys, failed to reach a simple felony drug case, involving one defendant and no legal issues of significant complexity, within a reasonable period of time.

The *Barker* factors all weigh in favor of dismissal. There can be no dispute that the length of delay is presumptively prejudicial and triggers constitutional examination. The reasons for the delay are neutral, institutional reasons which count against the Government. The potential exception relates to the substitution of counsel – the FPD office, Mr. Liebers, and Mr. Ange. The court has counted the time required by the replacement of Mr. Ange against the Defendant. The other lawyers left the case for reasons beyond his control. Defendant specifically raised the speedy trial issue and was detained for almost the entire pre-trial period. He remains detained today.

When the case is examined closely from the time of filing in late October 2016 to the trial date set in early January 2020, there is no good reason –or aggregation of reasons – why a relatively simple felony drug case should wait three years to be reached for trial. The court recognizes that no one involved in this case intended to delay the case for so long. But month by month, and from one continuance to the next, the delay built to unconstitutional proportions without justification or excuse.

## CONCLUSION

The court GRANTS the Defendant's motion to dismiss (Doc. 83) because a three-year wait for trial in the absence of complex issues or delay largely attributable to the defendant is too long.

**Remedy**

The only remedy for a violation of the speedy trial clause is dismissal.  *Strunk v. United States*, 412 U.S. 434 (1973).  In this case, the issue of dismissal with or without prejudice is of no consequence because the five-year statute of limitations on the charges in the indictment has now run.  18 U.S.C. § 3281.  Because the delay was neutral and institutional in its origins  – and not the result of any abuse of authority by the Government – the dismissal is without prejudice.

The court stays the release of the defendant for 30 days in light of a possible appeal.

Dated at Burlington, Vermont, this 9th day of April, 2020.

/s/ Geoffrey W. Crawford
Geoffrey W. Crawford, Judge
United States District Court